1
2
3
4
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
5
6

ANTHONY SHRONE PERSON,

Petitioner,

v.

MELISSA ANDREWJESKI,

Respondent.

Case No. 3:23-cv-5434-BJR-TLF

REPORT AND
RECOMMENDATION

Noted for: <u>January 19, 2024</u>

This matter comes before the Court on petitioner's ("Mr. Person") habeas corpus petition under 28 U.S.C. § 2254. Mr. Person stands convicted of 18 counts of sex offenses against his daughters, O.P. and M.P., and against A.A., the daughter of his former spouse: two counts of rape of a child in the first degree (Counts I and IX), two counts of rape of a child in the second degree (Counts II and X), two counts of rape of a child in the third degree (Counts III and XI), two counts of child molestation in the first degree (Counts IV and XII), three counts of child molestation in the second degree (Counts V, XIII, and XVII) two counts of child molestation in the third degree (Counts VI and XIV), two counts of incest in the first degree (Counts VII and XV), and three counts of incest in the second degree (Counts VIII, XVI, and XVIII). The offenses were committed between December 27, 1998 and December 31, 2012. Dkt. 69, State Court Record; Dkt. 69-1 at 2-24, Judgment and Sentence, Warrant of Commitment, Mason County Case No. 20-1-00147-23 (August 17, 2021).

REPORT AND RECOMMENDATION - 1

Mr. Person lists the following grounds for relief: (1) "Subject Matter" and "Personal Jurisdiction" U.S. Constitutional infringement—Due Process, Equal Protection, Right to Remain Silent; (2) Ineffective Assistance of Counsel and Prosecutor Misconduct; (3) Fraud, Invalid Judgment/ Sentence, Misconduct of the State's Witnesses, Law Enforcement Expungement of a favorable evidence toward defendant; and (4) Violation of Police Investigation/Petitioner resided outside the State of Washington during charging information — Violation of "Due Process/Equal Protection." Dkt. 19, Petition for Habeas Corpus. In addition, Mr. Person has requested an evidentiary hearing in this matter. *Id*.

The respondent has filed the state court record (Dkt. 69) and an Answer and Memorandum of Authorities. Dkt. 68. Mr. Person filed a reply to the answer on September 29, 2023. Dkt. 73.

For the reasons set forth below, the undersigned recommends that the request for an evidentiary hearing be DENIED, and that the petition be DISMISSED. Also, for the reasons set forth below, the undersigned recommends that issuance of the certificate of appealability (COA) be DENIED as well.

BACKGROUND

I.  Statement of Facts

The Washington Court of Appeals summarized the facts relevant to this matter as follows:

> In 2011, Person and his wife Ramona Jones lived in Shelton. [court's footnote. Jones divorced Person in 2018] Together they have 11 children, including Jones' daughter from a previous relationship, A.A. That June, two of their daughters, 15-year-old O.P. and 14-year-old M.P., began working at a Burger King on the Fort Lewis military base, Joint Base Lewis-McChord (JBLM).

In August 2011, Person filed a missing person report after O.P. ran away from home. Soon after, the military found O.P in the barracks at JBLM and investigated two soldiers for sexually assaulting both O.P. and M.P. During their interviews, the soldiers claimed that O.P. and M.P. disclosed sexual abuse by Person. The military police did not ask O.P. and M.P. about the allegations, but they referred the case to the Department of Social and Health Services (DSHS). [court's footnote. In her report, the special agent with the military police who investigated the matter and referred it to DSHS said that Person hired an attorney from Connolly Law Offices to represent the children, so she "can[ ]not talk with them." She also noted that "dad is a very slick talker."] Child Protective Services (CPS) contacted O.P. and M.P., but the girls did not disclose any sexual abuse by Person. CPS then referred the matter to the Shelton Police Department (SPD). SPD sent detectives to Person's home, but O.P. and M.P. "refused to cooperate."

Several years later in February 2018, A.A., O.P., and M.P. reported to police that Person sexually assaulted them as children. In April 2020, the State charged Person with 12 counts of sexual assault. As to A.A., the State charged Person with one count each of first and second degree child molestation and second degree incest. As for O.P., the State charged Person with one count each of first, second, and third degree rape of a child; first, second, and third degree child molestation; and first degree incest. And for M.P., the State charged Person with one count each of second degree child molestation and second degree incest.

In June 2020, the trial court issued a warrant for Person's arrest. In July, police found him living under a different name in Michigan. Police arrested and extradited Person to Mason County. The court arraigned Person and set bail at $250,000.

On September 18, 2020, the State amended the information to add six more counts. For the charges related to A.A., the State added one count each of first, second, and third degree rape of child, third degree child molestation, and first degree incest. And for O.P., the State added one count of second degree incest.

<u>Pretrial Motions</u>

In November 2020, Person moved to represent himself. The court granted his motion but also appointed standby counsel. Twice, Person asked the court to waive his bail and release him on his personal recognizance. The court denied both motions, finding each time that Person was a flight risk because he resides in Michigan and a community safety risk because of the seriousness and number of charges against him.

Person then sought to interview Jones, A.A., O.P., and M.P. Jones, A.A. and M.P. agreed to the interviews but would not agree to Person

interviewing them. O.P. also agreed to an interview but refused to have Person present during her interview. So, Person drafted questions for his standby counsel and court-appointed investigator to ask during the interviews. Person did not attend O.P.'s interview. Person planned to attend Jones' and A.A.'s interviews, but he cancelled the morning of the interviews, telling jail staff he was sick. Person's standby counsel and investigator conducted each interview and later provided summaries of the questions and answers to Person. [court's footnote. The record suggests that Person never interviewed M.P. At a hearing on December 30, 2020, the State noted that "three of the four State witnesses ... have given a pretrial interview voluntarily to standby counsel and a private investigator." In February 2021, the State told the court it was trying to arrange the "fourth and final interview." And at trial, Person asked for a continuance so that his private investigator could interview M.P. But at that time, M.P. declined the interview.]

After the interviews, Person moved to depose the witnesses, arguing that they refused to discuss the case and that "their testimony is material and necessary." Person also moved to dismiss the charges for "government misconduct," arguing that the prosecutor suppressed documents related to the 2011 sex abuse investigation. He argued the 2011 investigation showed that the witnesses previously denied any physical or sexual abuse, contradicting their later statements to police in 2018.

On December 30, 2020, the court heard both motions. It denied Person's motion to dismiss, concluding that the State provided Person with all known documents related to the 2011 investigation. As to Person's motion to depose, the trial court noted that it did not have enough information to address whether the witnesses refused to answer material questions during their interviews. The court denied Person's motion without prejudice so that he could "supplement his request by providing specifically what it is that's being refused."

In a hearing on January 5, 2021, Person renewed his motion to depose and reasserted the same arguments. The court noted that Person seemed to have a "very thorough understanding" of the details of the 2011 investigation, so it was unclear what information he would gain by deposing the witnesses. The court determined that the information was not material and denied the motion.

On January 19, 2021, Person filed a "Motion for Dismissal on Grounds of Spoliation of Evidence" under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The court heard the motion in February. Person claimed that the Mason County Sheriff's Office (MCSO), SPD, DSHS, and CPS possessed additional documents related to the 2011 investigation. And he argued that the State violated its obligations under

*Brady* by failing to preserve and disclose the information. The State again told the court it gave Person "all the evidence it has in its possession" and knew existed. The State explained that after submitting public disclosure requests, it gave Person 160 pages of investigative documents from the military, CPS, and SPD. In March 2021, the court denied Person's motion in a memorandum decision, explaining that he did not identify any material or exculpatory evidence withheld by the State.

<u>Trial Testimony</u>

At trial, Jones characterized Person as an "authoritarian," who physically and verbally abused her and the children. She stated that when SPD and CPS investigated the allegations of child abuse in 2011, Person "dictated" O.P. and M.P.'s cooperation with the investigation and "instructed" them how to answer questions. And she said that Person told her to "keep [her] mouth shut, not to talk about anything, let them do the work." On cross-examination, Jones said she did not see Person sexually assault their daughters and "was not aware of any sexual abuse in the home."

A.A., O.P., and M.P. all testified that Person sexually assaulted them. A.A. testified that Person began abusing her when she was 8 years old. The abuse ended when A.A. was 15, after he thought she was pregnant. A.A. then became concerned that Person started to abuse O.P. O.P. testified that Person began sexually assaulting her when she was 8 years old. She said the abuse continued until she was 16. And while M.P. did not remember when Person began abusing her, she said that Person repeatedly touched her before she turned 14 years old.

On cross-examination, O.P. and M.P both admitted that they denied Person sexually assaulted them during the 2011 investigation. O.P. testified that Person "ordered" her not to cooperate with the investigation. But M.P. said that Person did not "force[ ]" her to deny the abuse.

A jury convicted Person on all counts. Person appeals.

Dkt. 69-1 at 26-31, Court of Appeals Unpublished Opinion, Court of Appeals

Cause No. 84631-1-I (February 21, 2023).

1

II.  State Court Procedural History

2

A.      Direct Appeal

3

On May 27, 2022 counsel acting on behalf of Mr. Person filed a direct appeal of

the judgment and sentence in the Washington State Court of Appeals. Dkt. 69-1 at 45-

118, Court of Appeals Opening Brief of Appellant, Court of Appeals Cause No. 56253-7-

II (May 27, 2022). On February 21, 2023 the Court of Appeals affirmed the judgment

and sentence. Dkt. 69-1 at 26-43, Court of Appeals Unpublished Opinion, Cause No.

84631-1-I (February 21, 2023). On February 23, 2023 Mr. Person's counsel filed a

petition for review ("PFR") in the Washington State Supreme Court, arguing (1) that the

trial court erred by denying Mr. Person's motion to depose state witnesses, and (2) that

the State committed a *Brady* violation by failing to preserve evidence pertaining to prior

investigations. Dkt. 69-1 at 268-319, Washington Supreme Court Petition for Review,

Washington Supreme Court Cause No. 101830-4 (March 22. 2023). On July 12, 2023

the Washington Supreme Court denied review without comment. Dkt. 69-1 at 321,

Order, Washington Supreme Court Cause No. 101830-4 (July 12, 2023). On July 28,

2023 the Court of Appeals issued the mandate. Dkt. 69-1 at 323-324, Court of Appeals

Mandate, Superior Court No. 20-1-00147-3 (July 28,2023).

B.      Personal Restraint Petitions

On December 30, 2022 Mr. Person, acting *pro se*, filed a motion under Wash. R.

Crim. Pro. 7.8 in the Mason County Superior Court, seeking to vacate the judgment and

sentence. Dkt. 69-1 at 400-421, CrR 7.8 Motion for Relief "Manifest Injustice"

(December 30, 2022). The motion was transferred to the Washington Court of Appeals

for consideration as a personal restraint petition ("PRP"). Dkt. 69-1 at 423-425, Court of

Appeals Memorandum Opinion and Order Transferring to Court of Appeals as a

1    Personal Restraint Petition, Mason County Superior Court Case No. 20-1-00147-23

2    (January 6, 2023). In his PRP, Mr. Person argued: (1) insufficient evidence, alleging that

3    the witnesses were untruthful in their testimony, (2) violation of his speedy trial rights,

4    (3) violation of his Fourth, Fifth, Eighth, and Fourteenth amendment rights based on his

5    extradition from Michigan, (4) ineffective assistance of standby counsel, (5) excessive

6    bail, (6) that the State committed a *Brady* violation by failing to preserve evidence

7    pertaining to prior investigations, (7) that the State's investigation was deficient, and (8)

8    cumulative error. *Id*. On April 18, 2023 the Washington Court of Appeals dismissed the

9    PRP. Dkt. 69-1 at 653-658, Court of Appeals Order Dismissing Petition, Court of

10   Appeals Cause No. 58328-3-II (April 18, 2023). Mr. Person did not seek review by the

11   Washington Supreme Court and a certificate of finality was entered on May 24, 2023.

12   Dkt. 69-1 at 660, Court of Appeals Certificate of Finality, Mason County Superior Court

13   No. 20-1-00147-23 (May 24, 2023).

14          On May 5, 2023, Mr. Person filed a second PRP in the Washington Court of

15   Appeals. Dkt. 69-2 at 64-89, PRP, Court of Appeals Cause No. 58788-2-II (May 5,

16   2023). The Court of Appeals transferred the PRP to the Washington Supreme Court for

17   consideration. Dkt. 69-2 at 130-131, Order Transferring Petition to Washington State

18   Supreme Court, Court of Appeals Cause No. 58788-2-II (May 22, 2023).

19          In his second PRP Mr. Person argued that: (1) RCW 9A.44.020(1) is

20   unconstitutional, (2) making first degree rape a strict liability crime is contrary to the

21   principles of *State v. Blake*, 197 Wn.2d 170 (2021), (3) he is actually innocent. Dkt. 69-2

22   at 232-235, Supreme Court of the State of Washington Ruling Dismissing Personal

23

24

25

1    Restraint Petition, Court of Appeals Cause No. 58788-2-II (July 14, 2023). On July 14,

2    2023 the Washington Supreme Court denied the petition. *Id*.

3    <u>EXHAUSTION OF STATE COURT REMEDIES</u>

4    　　　The exhaustion of state court remedies is a prerequisite to the granting of a

5    petition for writ of *habeas corpus*. 28 U.S.C. § 2254(b)(1). The highest state court must

6    be given a full and fair opportunity to consider all claims before presenting them to the

7    federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d

8    1083, 1086 (9th Cir. 1985). The respondent states that Mr. Person has presented his

9    claims to the Washington Supreme Court and thus exhausted his state court remedies.

10   Dkt. 68 at 8.

11   <u>DISCUSSION</u>

12   I.  <u>Standard of Review</u>

13   　　　A *habeas corpus* petition filed under 28 U.S.C. § 2254:

14   [S]hall not be granted with respect to any claim that was adjudicated
     on the merits in State court proceedings unless the adjudication of the
15   claim—

16   (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
17   determined by the Supreme Court of the United States; or

18   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
19   State court proceeding.

20   28 U.S.C. § 2254(d). A state court decision is "contrary to" the Supreme Court's "clearly

21   established precedent if the state court applies a rule that contradicts the governing law

22   set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

23   (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). It also is contrary to the

24   Supreme Court's clearly established precedent "if the state court confronts a set of facts

25

that are materially indistinguishable from a decision" of the Supreme Court, "and

nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision involves an "unreasonable application" of the Supreme

Court's clearly established precedent if: (1) the state court "identifies the correct

governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to

the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal

principle" from the Supreme Court's precedent "to a new context where it should not

apply or unreasonably refuses to extend that principle to a new context where it should

apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more

than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's

application of clearly established law must be objectively unreasonable." *Id.*; *see also*

*Schriro v. Landrigan*, 550 U.S., 465, 473 (2007).

This is a "'highly deferential standard," which "demands that state-court decisions

be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)).

"[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102

(quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in

judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore,

" a state prisoner must show that the state court's ruling on the claim being presented

was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

A federal habeas corpus petition also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual determination is "presumed to be correct," though, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). As such, a district court "may not simply disagree with the state court's factual determinations," but rather it must "conclude" that those determinations did not have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d 1041, 1046 (8th Cir. 1998). "[W]hether a state court's decision was unreasonable" also "must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court knew and did," and the state court's decision is "measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Cullen*, 563 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)); *see also Greene v. Fisher*, 132 S.Ct. 38, 44 (2011). In addition, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 487 U.S. 764, 780 (1990)). The error, furthermore, must have "had substantial and injurious effect or

influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Katteakos v. United States*, 328 U.S. 750, 776 (1946)) (*habeas* petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

### Jurisdiction

Mr. Person challenges the State of Washington's subject matter jurisdiction and personal jurisdiction in his criminal proceedings. Dkt. 19 at 5. This claim is frivolous. Mr. Person was charged with criminal offences that all occurred within Washington State. *See* Dkt. 69-1 at 2-24, Judgment and Sentence, Warrant of Commitment, Mason County Case No. 20-1-00147-23 (August 17, 2021). "[A]s a matter of state sovereignty, a State has jurisdiction over all of its territory…" *Oklahoma v. Castro-Huerta*, 142 U.S. 2486, 2493 (2022) (citing U.S. Const. Amend. 10).

The state court reasonably determined that Mason County Superior Court had subject matter and personal jurisdiction over Mr. Person's claims. *See* Dkt. 69-2 at 233, Supreme Court of the State of Washington Ruling Dismissing Personal Restraint Petition, Court of Appeals Cause No. 58788-2-II (July 14, 2023). Therefore, the Court recommends that Mr. Person's petition be denied as to Ground 1.

### Ineffective Assistance of Counsel

Mr. Person argues in his Ground 2 that he received ineffective assistance of counsel during trial. Dkt. 19 at 7. This argument is frivolous because Mr. Person waived his right to counsel and decided to represent himself at trial. *See* Dkt. 69-1, at 28, Court of Appeals Unpublished Opinion, Court of Appeals Cause No. 84631-1-I (February 21,

1  2023).

2      Under the Sixth Amendment, a criminal defendant has the right to self-

3  representation. *Faretta v. California*, 422 U.S. 806, 819 (1975). However, a defendant

4  who waives the right to counsel cannot then claim ineffective assistance of counsel. *Id*.

5  at 835 n.46. The Supreme Court has not clearly established a constitutionally protected

6  right to standby counsel. *See McKaskle v. Wiggins*, 456 U.S. 168, 183 (1984).

7  Accordingly, the state reasonably concluded that Mr. Person did not demonstrate

8  ineffective assistance of counsel. Dkt. 69 at 656, Court of Appeals Order Dismissing

9  Petition, Court of Appeals Cause No. 58328-3-II (April 18, 2023). Therefore, the Court

10  recommends that Mr. Persons petition be denied as to Ground 2.

11      **Prosecutorial Misconduct**

12      Mr. Person alleges prosecutorial misconduct in his Grounds 2, 3, and 4, based

13  on discovery violations, comment on petitioner's right to remain silent, false testimony,

14  and actual innocence. Reviewing courts must evaluate the impact of a prosecutor's

15  potentially prejudicial misconduct in the context of the entire trial. *Hovey v. Ayers*, 458

16  F.3d 892, 922 (9th Cir. 2006) (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 645

17  (1974)). A reviewing court asks whether the prosecutor's comments or actions "so

18  infected the trial with unfairness as to make the resulting conviction a denial of due

19  process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see Parker v. Matthews*, 567

20  U.S. 37, 45 (2012) (per curiam) (holding that *Darden* standard is "clearly established

21  Federal law" under 28 U.S.C. § 2254(d)).

22      In considering this question, the court must examine the entire proceedings and

23  place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, 765-66

24

25

(1987). A prosecutor has wide latitude in closing argument to make reasonable inferences based on the evidence. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991). A trial error is presumed to be harmless unless it had a "substantial or injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The petitioner bears the burden to state facts that point to a real possibility of constitutional error regarding prosecutorial misconduct. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

    1.    <u>Brady Violation</u>

    The state courts reasonably applied clearly established federal law and concluded that Mr. Person failed to identify any deficiencies in the criminal investigation or exculpatory material that was withheld. Therefore the Court should deny federal habeas corpus relief as to Mr. Persons' claims under *Brady*. Here, the state court applied clearly established federal law when it concluded that Mr. Person failed to identify any deficiencies in the criminal investigation or exculpatory material that was withheld and therefore the Court recommends the petition be denied as to Mr. Persons' claims under *Brady*. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

    The Constitution requires that the prosecution disclose to an accused all evidence that is "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The duty to disclose encompasses both exculpatory evidence and impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *Bagley*, 473 U.S. at 676). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

REPORT AND RECOMMENDATION - 13

1   have been different." *Kyles v. Whitely*, 514 U.S. 419, 433-34 (1995) (quoting *Bagley*,

2   473 U.S. at 682). A "reasonable probability" is a probability sufficient to "undermine[]

3   confidence in the outcome of the trial." *Id.* at 434 (quoting *Bagley*, 473 U.S. at 678).

4       To succeed on a *Brady* claim, a petitioner must show: (1) the evidence in

5   question was favorable to the defendant, meaning that it had either exculpatory or

6   impeachment value, (2) the prosecution possessed and withheld the evidence, and (3)

7   the defendant was prejudiced by the suppression. *Strickler*, 527 U.S. at 281-82 (1999).

8   The prejudice prong requires that the petitioner establish a reasonable probability that

9   the undisclosed evidence would have produced a different result. *Id.* at 289. In

10  determining whether the petitioner has satisfied this burden, the court must consider the

11  evidence in light of all the evidence presented at trial, including forensic and other

12  physical evidence and the testimony of other witnesses. *Id.* at 292-94. Information that

13  is not admissible is not evidence, and thus cannot be material exculpatory evidence that

14  would affect a verdict. *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995).

15      Mr. Person raised the issue of an alleged *Brady* violation multiple times in the

16  Washington State courts. The Washington Court of Appeals rejected his arguments on

17  direct appeal because he failed to identify any material exculpatory evidence that the

18  prosecution possessed and withheld. In affirming Mr. Person's conviction on appeal, the

19  Washington Court of Appeals stated:

20          Person argues that the State violated its obligations under *Brady* by either
21      destroying or failing to disclose exculpatory information from the 2011 sex abuse
            investigations. We disagree.

22          Under *Brady*, the State has an obligation to disclose all evidence in its
            possession favorable to the accused, even if not requested by the defendant.
23      *Brady*, 373 U.S. at 87; *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158
        (2011). The obligation extends to evidence possessed by law enforcement.

24

25

REPORT AND RECOMMENDATION - 14

*Mullen*, 171 Wn.2d at 894. To establish a *Brady* violation, a defendant must show that (1) the evidence at issue favors the accused because it is either exculpatory or impeaching, (2) the State willfully or inadvertently suppressed the evidence, and (3) the evidence was material. *State v. Davila*, 184 Wn.2d 55, 69, 357 P.3d 636 (2015); *see In re Pers. Restraint of Mulamba*, 199 Wn.2d 488, 503, 508 P.3d 645 (2022) (the terms "materiality" and "prejudice" are interchangeable under the third *Brady* prong).

But the State need not disclose information that it does not possess or of which it is unaware. *Mullen*, 171 Wn.2d at 895. And the State does not commit a *Brady* violation when "'a defendant has enough information to be able to ascertain the supposed *Brady* material on his own.'" *Id*. at 896 (quoting *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991)). We review an alleged *Brady* violation de novo. *Mulamba*, 199 Wn.2d at 498.

Person argued below that law enforcement agencies possessed documents related to the 2011 investigation, that the State was aware of those documents, and that it failed to disclose or preserve them. The State told the court that it submitted public records requests to MCSO and SPD and provided everything it had to Person, including 160 pages of investigation done by the military police at JBLM and CPS. Still, Person claimed that other law enforcement agencies must have been involved in the investigation because

> when you look at [SPD's] policy [manual], there's steps A through G they're supposed to follow. They're supposed to coordinate with other investigating agencies. They're supposed to coordinate with DSHS, CPS, et cetera. [court's footnote 9. Person's list of involved agencies continued to grow throughout the proceedings. At the time of trial, Person identified the Federal Bureau of Investigation, Pierce County Sheriff's Department, Tacoma Police Department, United States Army judge advocate general lawyers from JBLM, Mary Bridge Children's Hospital, Oakland Bay Pediatrics (now Mason Clinic Pediatrics), and Connolly Law Offices as agencies in possession of exculpatory information.] There's a lot of steps for them to follow. And so I asked for that material, and I have yet to receive that material.

But Person did not show that other law enforcement agencies participated in the 2011 investigation. Nor did he show that the investigation generated additional documents that would include exculpatory information.

In its memorandum decision, the trial court denied Person's motion, explaining:

> The Court is unable to begin the [*Brady*] analysis because the Defense has failed to identify any material exculpatory evidence. The Defendant is relying upon an assumption that a more thorough investigation was performed by [MCSO] and/or [SPD] and that documents memorializing the

investigation were subsequently destroyed. However, outside of Defendant's assumptions and conclusions based upon those assumptions, there is no support for such proposition.

We agree with the trial court. Person fails to show that the State violated its obligations under *Brady*. [footnote omitted]

Dkt. 69-1 at 35-137, Unpublished Court of Appeals Opinion, Court of Appeals Cause No. 84631-1-I (February 21, 2023).

Mr. Person raised his *Brady* claims again in his PRP and the Washington Court of Appeals again rejected the claim, because he previously raised it on direct appeal.

Person also argues that the State violated its obligations under *Brady* by failing to disclose information from the 2011 sex abuse investigations. But this argument was addressed on direct appeal. A petitioner may not renew a ground for relief that was raised and rejected on direct appeal unless the interests of justice require reconsideration of that ground. *In re Pers. Restraint of Knight*, 196 Wn.2d 330, 341, 473 P.3d 663 (2020).

Dkt. 69-1 at 656-657, Court of Appeals Order Dismissing Petition, Court of Appeals Cause No. 58328-3-II (April 18, 2023). The state supreme court also rejected Mr. Person's second PRP on this ground. Dkt. 69-2 at 234, Ruling Dismissing Personal Restraint Petition, Court of Appeals Cause No. 58788-2-II (July 14, 2023). The state courts reasonably applied federal constitutional law under *Brady v. Maryland,* and therefore the Court should dismiss this claim under *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

2.    Defendant's Right to Remain Silent

In Ground 3 Mr. Person argues that the prosecutor wrongfully asked state witness M.P. on cross examination if she admitted to another defense witness that she and other alleged victims were forced to make false statements and false declarations. Dkt. 19 at 8. In Ground 1 Mr. Person raises his right to remain silent and his Fifth and

Fourteenth Amendment Rights. *Id.* at 5.

The Fifth Amendment prevents the prosecution from suggesting that a criminal defendant's invocation of the right to remain silent is evidence of guilt. *Griffin v. California*, 380, U.S. 609, 615 (1965). However, the Supreme Court has not decided whether prearrest silence may be used as evidence of guilt. *See Jenkins v. Atkins*, 447 U.S. 231, 236 n. 2 (1980). Furthermore, a defendant's Fifth Amendment rights are not violated when prearrest silence is used to impeach his credibility. *Id.* at 238. "Once a defendant decides to testify, '[t]he interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination.'" *Id.* (quoting *Brown v. United States*, 356 U.S. 148, 156 (1958)). The state court rejected Mr. Person's claim that his right to remain silent was violated by the prosecutor, explaining:

> We construe the United States Constitution's Fifth Amendment privilege against self-incrimination liberally, prohibiting the State from using a defendant's prearrest silence as substantive evidence of guilt. *State v. Easter*, 130 Wn.2d 228, 236-37, 922 P.2d 1285 (1996). Nor may the State use a defendant's silence to "suggest to the jury that the silence was an admission of guilt." *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). But the State does not violate the constitution when referring to prearrest silence to impeach a defendant's testimony. *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008).

> Person first argues that the prosecutor committed misconduct by eliciting testimony from SPD Patrol Sergeant Daniel Patton [footnote omitted] that Person "chose not to speak with police prior to being arrested." But the record shows that it was Person who first mentioned his prearrest silence and that the State elicited Sergeant Patton's testimony in rebuttal.

> At trial, Person testified:

> 2019 January, I got a call from Officer Patton. Hi, this is Officer Patton with [SPD], child abuse allegations. This was about June, 2019. I was like no, I don't want to talk about it, because I was tired of being prodded and

probed. Originally, I thought it was about Fort Lewis, that whole thing, following up on that. Didn't hear anything.

He went on to testify:

[W]hen I received word that false statements were made, false allegations were made, I did what I did in 2011, June. I notified Officer Patton on two separate occasions, July 20th, July 1st, around July 1st, 2020 and August, 2020. I notified the private investigator ... in July, 2020, August, 2020. I even sent a recorded conversation to them on two separate occasions. No follow-up.

The State then called Sergeant Patton back to the stand to impeach Person's claim that he tried to reach out and provide the officer exculpatory information:

Q.      Detective Dan Patton, when you were investigating this case in 2018, as - your previous testimony was that you investigated the case, you interviewed the alleged victims and then you would attempt to reach out to the alleged suspect. Is that correct?

A. Yes.

Q. Did you attempt to reach out to the alleged suspect, Anthony Person, in 2018?

A. Not in 2018. I think it was - one second - 2019.

Q. Alright. So, I'll rehash. The investigation continued. The initial allegations came in 2018, but the investigation carried over to 2019?

A. Correct. At some point I made contact - communication contact with Mr. Person.

Q. Okay. And did Mr. Person cooperate with your investigation?

A. Mr. Person declined to discuss the investigation with me.

Q. Did Mr. Person reach out to you himself?

A. In roughly July, about 2020.

Q. So that would have been after charges were filed?

A. That was after charges were filed.

Q. Are you able to speak to a defendant after charges have been filed?

A. Only on very, very rare occasions, and definitely not just me and the defendant. It would have to be with the defendant's attorney and ideally initiated by the defendant's attorney to secure those Sixth Amendment [footnote omitted] rights, protecting his constitutional rights.

Q. Did the defendant provide you any documentary evidence?

A. He verbalized to me that he wanted me to get in contact with someone. Once again, I was very uncomfortable speaking to him because the charges had been filed and I didn't want to violate any constitutional rights, and I requested that he contact his legal representative to communicate with me, and that was the only discussion that we had.

Q. Thank you. I have no further questions.

Because the State offered Sergeant Patton's testimony only to impeach Person's claims, and the prosecutor did not argue or suggest that Person's noncooperation implied consciousness of guilt, we conclude that the prosecutor's questions do not amount to misconduct.

Dkt. 69-1 at 38-40, Court of Appeals Unpublished Opinion, Court of Appeals Cause No. 84631-1-I (February 21, 2023).

As to the questions posed to Sergeant Patton, given that the prosecution had a proper basis for inquiring about Mr. Person's contact with Sergeant Patton during the 2020 investigation — in order to impeach Mr. Person's testimony about his attempts to speak with investigators — the state court's rejection of Mr. Person's claim was not unreasonable. *See Jenkins v. Anderson*, 447, U.S. 231, 240 (1980).

The state appellate court also rejected Mr. Person's arguments regarding the prosecutor's statements during closing argument on the basis that the comments did not relate to Mr. Person's prearrest silence:

Person next argues that the prosecutor committed misconduct in his closing argument by saying that Person "slammed the door" on police during their investigation. But, taken in context, the prosecutor's comment did not relate

to Person's prearrest silence in 2020. Rather, the prosecutor used the phrase to describe Person's efforts to interfere with the 2011 investigation into O.P. and M.P.'s disclosures.

When asked about the 2011 investigation at trial, Jones explained that Person dictated the family's answers to questions from police and DSHS:

Q. Ms. Jones, so you were aware of a[n] investigation that occurred on JBLM surrounding your daughters [O.P.] and [M.P.]?

A. Correct.

Q. And that investigation, is it - who dictated that - did that follow-up investigation?

A. Anthony Person did.

Q. Okay. In any of the interviews that you provided to DSHS, was that influenced or dictated by any individual?

A. Yes, it was.

Q. And who was that influenced and dictated by?

A. Anthony Person.

Q. And what was your biggest fear in complying with a DSHS investigation?

A. That they would take my children out of the home.

Q. Okay. And as a result of the investigation that occurred based upon preliminary allegations from JBLM, isn't it true that Anthony Person hired an attorney?

A. He did.

Q. Isn't it true that Anthony Person dictated [O.P.]'s and [M.P.]'s cooperation in the investigation?

A. He did.

Q. Were you ever instructed how to answer questions in regards to an investigation?

A. I was.

Q. And what were your instructions?

A. To keep my mouth shut, not to talk about anything, let them do the work.

Q. And were those instructions levied down by the defendant, Anthony Person?

A. They were.

Similarly, O.P. testified that Person instructed her not to answer questions in the 2011 CPS investigation:

A. We weren't allow[ed] to talk to the police at all because Anthony would be sent away if we did. He reinforced that. Anthony was the main person who dealt with law enforcement if they showed up to the door or not. . . . .

Q. And when you were [working at JBLM] did you disclose - have any disclosures about the sexual abuse?

A. Yes, I did.

Q. And was that investigated?

A. It was disclosed through a man I was dating. I had told him I was being sexually abused. And detectives did come out. They knocked on the door, they had a piece of paper in their hand. I couldn't really read it. I said yes to it, there was sexual abuse in there. I thought it was - but yes, after they left we were basically - not basically, we didn't have no choice - Anthony was just telling people to keep our mouth shut or, you know, just be very intimidating. And so, CPS did come out.

Q. Okay. And did you make any disclosures of sexual abuse to CPS?

A. No, I didn't.

Q. And why could you not?

A. I was afraid if I did Anthony would fly off the handle, somebody would seriously be just - Anthony would just get into these moments where he would be on the verge of getting ready to kill you, seriously.

Q. Okay. And —

1

2

> A. And that just could vary. Like, it could be your brother. You know, if he was mad about something he would just snap. I jumped in a couple of times to help my brother or my mother. He would turn around and just beat you until you couldn't breathe.

3

4

> During closing argument, Person repeatedly referred to O.P.'s and M.P.'s denials of sexual abuse in 2011. He asserted that "the accusations have not been completely and thoroughly investigated by law enforcement in this particular case. . . . It was alleged in the past, it was investigated, unfounded. We still don't have any findings." Responding to Person's comment, the prosecutor told the jury that Person "wants to rely on this [2011] investigation, but you don't have any of that investigation. Why? Because it was unable to be completed because of his control, his influence." The prosecutor explained that "it would have been ... nice"

5

6

7

8

9

> if O.P. and M.P. did not endure Person's control, but "[n]ope, we didn't have that. Anthony Person slammed the door on law enforcement. But he wants you to believe this long investigation, two-plus years long, exonerates him." In context, the prosecutor's comment referred to Person's efforts to control the 2011 investigation and aimed to rebut Person's argument that the sexual assault allegations were "unfounded." We conclude that the argument does not amount to a comment on Person's constitutional right to prearrest silence.

10

11

12

13  Dkt. 69-1 at 40-42, Court of Appeals Unpublished Opinion, Court of Appeals Cause No.

14  84631-1-I (February 21, 2023).

15      As to the closing arguments, the prosecutor's comment that Mr. Person

16  "slammed the door" during the 2011 investigation was in response to Mr. Person's

17  closing statements about the insufficiency of the 2011 investigation – not Mr. Person's

18  prearrest silence. The state appellate court's application of federal constitutional law

19  was not unreasonable. Therefore, the Court should dismiss this claim under *Cullen v.*

20  *Pinholster*, 563 U.S. 170, 181 (2011).

21      **Sufficiency of Evidence**

22      Mr. Person states that he is actually and factually innocent of all charges and that

23  the crimes reported to law enforcement were a result of false information. Dkt. 19-1 at 3-

24  5. When evaluating a claim of insufficiency of the evidence to support a conviction, the

25

REPORT AND RECOMMENDATION - 22

1    question is not whether the Court itself believes the evidence establishes guilt. "Instead,

2    the relevant question is whether . . . *any* rational trier of fact could have found the

3    essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

4    U.S. 307, 319 (1979) (emphasis in original); *Wright v. West*, 505 U.S. 277, 284 (1992).

5    The Court must "view the record as a whole in the light most favorable to the

6    prosecution." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). The constitutional

7    sufficiency of evidence review is sharply limited. *Wright*, 505 U.S. at 296. The jury is

8    entitled to believe the State's evidence and disbelieve the defense's evidence. *Id.*

9        Review under the *Jackson* standard is subject to "two layers of judicial

10    deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, "it is the responsibility

11    of the jury—not the court—to decide what conclusions should be drawn from evidence

12    admitted at trial." *Id.* (internal quotations and citations omitted). Second, on federal

13    habeas corpus review, a reviewing court "may not overturn a state court decision

14    rejecting a sufficiency of the evidence challenge simply because the federal court

15    disagrees with the state court. The federal court instead may do so only if the state

16    court decision was 'objectively unreasonable.'" *Id.* (internal quotations and citations

17    omitted).[1] The Court of Appeals rejected Mr. Person's claims of insufficient evidence:

18            Person argues that the State produced insufficient evidence to support his
19        convictions. To show his convictions rested on insufficient evidence, Person must
    prove that, after viewing the evidence in the light most favorable to the State, no
20        rational trier of fact could have found the essential elements of the crime beyond
    a reasonable doubt. *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256

21

---

[1] Mr. Person does not address the *Jackson* standard but instead appears to argue based upon a theory of
22    actual innocence. *See* Dkt. 19-1 at 15. The Ninth Circuit has "not resolved whether a freestanding actual
innocence claim is cognizable" in a non-capital habeas case. *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th
23    Cir. 2014). Accordingly, the *Jackson* standard applies. But the actual innocence standard, similar
to *Jackson*, requires a showing that "no reasonable juror would have found petitioner guilty beyond a
reasonable doubt." *Jones*, 763 F.3d at 1247 (citations and quotation marks omitted). Mr. Person has not
24    made that showing.

25

P.3d 277 (2011). A petitioner making such an argument necessarily admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Id*. This court defers to the trier of fact on questions of credibility, persuasiveness, and conflicting testimony. *Id*.

Person argues that the victim witnesses were lying about the allegations of abuse. To support his contentions, Person relies on his personal affidavit stating the abuse never occurred, his own testimony at trial, and the fact that DSHS and CPS closed their investigation in 2011 after his two children did not disclose any abuse. Essentially, Person asks this court to reweigh the evidence and find his victims' testimony not credible based only on his assertions. Such arguments are insufficient to warrant relief and Person's claim fails. Exhibit 33, at 3.

Dkt. 69-1 at 655, Court of Appeals Order Dismissing Petition, Court of Appeals Cause No. 58328-3-II (April 18, 2023). The Washington State Supreme Court also rejected his claims of actual innocence and insufficient evidence in the second PRP:

Person also contends that he is actually innocent and that police and the prosecutor knew this to be the case. But he does not show he was actually innocent. Relatedly, he claims the evidence was insufficient. But he challenged the sufficiency of the evidence in a previous personal restraint petition. He shows no good cause for raising this issue again. RAP 16.4(d)

Dkt. 69-2 at 234, Washington Supreme Court Ruling Dismissing Personal Restraint Petition, Court of Appeals Cause No. 58788-2-II (July 14, 2023).

Petitioner has not met his burden under *Jackson* to establish there is not any rational trier of fact that "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Therefore, the state court's application of federal constitutional law and rejection of Mr. Person's argument was not unreasonable, therefore the Court should dismiss this claim under *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must

consider whether such a hearing could enable an applicant to prove the petition's

factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.*

at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the

Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563

U.S. 170 (2011). A hearing is not required if the allegations would not entitle Petitioner

to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes

the applicant's factual allegations or otherwise precludes habeas relief, a district court is

not required to hold an evidentiary hearing." *Id.*; *see Pinholster*, 563 U.S. 170. The

Court finds it is not necessary to hold an evidentiary hearing in this case because Mr.

Person's claim may be resolved on the existing state court record.

<u>CERTIFICATE OF APPEALABILITY</u>

If the Court adopts the undersigned's Report and Recommendation, it must

determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254

Cases in the United States District Courts ("The district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant."). A COA

may be issued only where a petitioner has made "a substantial showing of the denial of

a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by

demonstrating that jurists of reason could disagree with the district court's resolution of

his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003).

The undersigned recommends that petitioner not be issued a COA. No jurist of

reason could disagree with the above evaluation of his constitutional claims or conclude

that the issues presented deserve encouragement to proceed further. Petitioner should

address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition for writ of *habeas corpus* with prejudice. A proposed order and proposed judgment are attached.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on January 19, 2024, as noted in the caption.

Dated this 20th day of December, 2023.

Theresa L. Fricke
United States Magistrate Judge